Reed, P. J.,
delivered the opinion of the court.
There was no controversy in regard to the note upon which the suit was brought. The contest was over the issues upon the cross complaint. There was considerable conflict in the testimony of the parties, who were the principal witnesses. The facts placed beyond dispute by the testimony of both are that the plaintiff in error wished to get title to the tracts of land near the city of Trinidad. The lands were a part of the public domain, — the property of the United States government. Defendant in error was a person whose business it was to operate in land, secure title, etc. The parties met, and some kind of agreement or contract was made whereby Robards was to secure, through *175 other parties, title of some kind to the two tracts of land, the lands to be conveyed to Beshoar; and upon such conveyance Beshoar was to pay for the 40 acre tract $800, and for the 120 acre tract $2,160. Although the allegation in the defendant’s cross complaint is that the plaintiff covenanted and agreed to and with the defendant “that he, the said plaintiff, would obtain for, and cause to be vested in, this defendant, within one year from the date thereof, a good and indefeasible estate, in fee simple,” etc., such allegation was not sustained by proof. The concurring testimonjr of both parties establishes the fact that there was no written agreement or contract between the parties, and that the contract, whatever it was, was verbal; hence no “covenants ” as stated. The only writing in regard to it appears to have been a memorandum made and left with the bank in Pueblo for the guidance of the bank when the money to be paid was deposited by the defendant, and, although the evidence was somewhat conflicting, it is plainly inferable that the agreement was that the plaintiff was to employ parties to make the entries and conveyances to the defendant; that the entries and receipts and certificates of entry made by the officers of the local land office, and proper deeds of conveyance from the parties to the defendant, were to be deemed a compliance and the bank was to receive the deeds, and pay the money to the plaintiff; that the parties, Sharp and Woolse}r, made such entries, received the officers’ certificate, deposited them and satisfactory deeds of conveyance; and that the money was paid by the bank to the plaintiff. The defendant testified in regard to the memorandum: “I think it was placed in the First National Bank of Pueblo, with instruction, in certain events, to turn over a certain amount of money to Mr. Robards in exchange for a deed accompanied by evidence of title originating from the government.” Defendant also testified that at the time the matters were closed he went with the plaintiff to Pueblo, and that he received and retained the certificates of entry, and the deeds from the parties. The only conclusion that can be reached *176 from this is in regard to the character of the contract, and that he received from the bank all the evidence of title that the bank was to require from the parties. There was no complaint of negligence or violation of instructions by the bank. Had he not received what he bargained for, he could have refused the papers from the bank, and held the bank for the money. By his own testimony, he tacitly admits all the testimony of the plaintiff, — conclusively shows that defendant at that time regarded the terms of the agreement as fully complied with. Subsequently (for some reason not well defined, and unimportant in this discussion) the entries of Sharp and Woolsey were canceled by the department of the interior. And it appears that defendant, by quitclaim deed, relinquished his title to the general government, and, on or about the 2d day of May, plaintiff and defendant met, entered into a new contract whereby plaintiff, for a further consideration of $2,400, through other parties, was to acquire titles which were to be conveyed to the defendant; that the entries were made, and title vested in the defendant. Of the $2,400, defendant paid in cash $1,200, and executed the note on which suit wa.s brought for the other $1,200. On the establishing of these facts the court was warranted in directing the jury to disregard the counterclaims, as the subsequent contract, and the payment of further money, were clearly, in contemplation of law, a settlement of the entire matter, and a waiver on the part of the defendant of all claims of indemnity by reason of the failure of the former titles; hence that the matters alleged in the cross complaint presented no defense to the note.
It is urged in argument that the court erred in refusing to grant a continuance on the ground of surprise occurring upon the amendment of the plaintiff’s replication under-leave of the court, “ as will appear from the affidavit filed by the defendant, requesting said continuance,” etc. A very careful examination of the record and bill of exceptions fails to show any motion for a continuance on the ground of surprise, or on any ground, or any affidavit in support of any *177 motion. The following I find in the bill of exceptions: “ The plaintiff rests. Defen dant n ow files with the clerk of this court a motion for the court to instruct the jury to return a verdict for the defendant. Motion denied. Defendant excepts. Motion of defendant for judgment upon the pleadings denied, and plaintiff required to file instanter a general denial to both grounds of counterclaim. The defendant thereupon insists upon a continuance as the terms of this leave to amend, which application is denied by the court, to which ruling the defendant excepts.” I can hardly see how defendant was either prejudiced or surprised. The cross complaint was of new and affirmative matter, and, in order to prevail, every material allegation must have been established by evidence. The general denial, in reply, did not throw any greater burden upon the defendant than he had assumed by his complaint. No demurrer was filed to the first replication of the plaintiff. It was prolix and unnecessarily long, and perhaps argumentative; but it contained no admissions of matter contained in the cross complaint, and was throughout a series of specific denials. Had it contained concessions or admissions relieving the defendant from proving any material fact, then the denial of such fact in the second reply might have created a surprise. Defendant must have been presumed to be prepared to offer proof to sustain his allegations, and it is impossible to see how he was prejudiced by being put to the proof of them.
It is urged that the court erred in refusing an instruction asked by the defendant. An examination of it shows that it was properly refused. It was at variance with all the evidence in regard to the contract. It was asked that the jury be charged that by the contract the defendant was to be invested with a valid legal and indefeasible title. Such was in no respect the contract proved.
It was further urged that the court erred in refusing to receive in evidence copies of letters from the commissioner of the general land office in regard to the cancellation of the entries. Conceding that such finding was conclusive, and *178 established the facts necessary to entitle the defendant to ■recover, we fail to see how the defendant was injured by such ruling, even if it was erroneous. The fact of the cancellation was established by all the evidence. 'That it was regarded by both parties, and acted upon, as conclusive, is shown by the evidence of both parties, and a second contract made to secure title to the same lands, and the title subsequently acquired. The evidence failing to establish the case of the defendant, or any defense to the action of the plaintiff, it was not only the right, but the duty, of the court ■to instruct the jury to find for the plaintiff. The judgment ■of the district court must be affirmed.

Affirmed.